409 So.2d 1341 (1981)
FINANCE, INVESTMENT AND REDISCOUNT COMPANY, a corp.
v.
William WELLS and Cecil Patterson.
79-285.
Supreme Court of Alabama.
August 7, 1981.
On Rehearing February 26, 1982.
George C. Hawkins, Gadsden, and Harvey Elrod of Hutson & Elrod, Decatur, for appellant.
J. Wilson Dinsmore and Fred Blanton, Birmingham, for appellees.
PER CURIAM.
This is an appeal from an $80,000.00 jury verdict rendered in a shareholder's derivative action from the Circuit Court of Etowah County in favor of William Wells and Cecil Patterson in their capacity as minority shareholders of Forrest Discount Company, Inc. (Forrest), and against Finance, Investment and Rediscount Company (F, I and R), the majority shareholder and foreclosing creditor of Forrest. We reverse and remand as to the equitable issues tried before the jury. Shareholder derivative actions are equitable in nature. Plaintiffs are not entitled to a trial before a jury of equitable issues. The verdict is affirmed on the legal issue raised by F, I and R in its counterclaim, and on the legal count asserted by the plaintiffs in their individual shareholder capacity that were tried to the jury.
Wells and Patterson, plaintiffs below, are minority shareholders of Forrest, which is a consumer financing company. F, I and R, defendant below, is the 51% majority shareholder and major creditor of Forrest. F, I and R is a wholesale finance company, lending money to consumer finance companies.
*1342 In 1967, F, I and R became Forrest's major creditor when it repaid Forrest's debt to Finance Company of America, and when it promised to supply Forrest with a continuing source of funds enabling Forrest to operate its business. In exchange, Forrest and F, I and R entered into a continuing security agreement, dated January 11, 1967, under which F, I and R received a security interest in all of Forrest's personal property and assets, including the customer accounts. Among other things, the agreement stated that any default uncured for 60 days converted the agreement into an assignment to F, I and R of all outstanding shares of Forrest stock, giving F, I and R the exclusive right to vote the stock in electing members of the board of directors.
By 1969, Forrest had defaulted under the 1967 agreement, and in lieu of foreclosure and the consequent formal assignment to F, I and R of Forrest's stock, F, I and R, Forrest, Wells, Patterson and Clifford Reavis negotiated an agreement, dated January 7, 1969, enabling Forrest to stay in operation. In essence, the 1969 agreement provided that Forrest could retain $10,000.00 from its collections to be used for reinvesting, and it could also keep an amount necessary to pay its operating expenses which included the sum of $1,100.00 per month to be paid to F, I and R as interest on the existing indebtedness. The balance of Forrest's collections was to be remitted to F, I and R where it was to be applied to reduce Forrest's debt to F, I and R. The agreement also confirmed all existing agreements and contracts as between Forrest and F, I and R.
Clifford Reavis was the sole shareholder of Forrest's total 100 shares of outstanding stock. In accordance with the terms of the 1969 agreement, he surrendered his 100 shares, and delivered 51 shares to F, I and R, gave 10 shares each to Wells and Patterson, and retained 29 shares for himself. Later that year, Wells purchased Reavis's 29 shares by delivering to him a $1,000.00 note plus a $5,000.00 check which he borrowed for that purpose from F, I and R. Consequently, F, I and R was the majority shareholder and Wells and Patterson were the remaining minority shareholders. Two F, I and R principals were elected to the board of directors of Forrest, as were Wells and Patterson. Wells and Patterson were also salaried employees of Forrest, entrusted with the daily management and operation of the company.
Finally, in 1971, F, I and R foreclosed on Forrest's indebtedness under the security agreement, and created a conduit corporation through which all of Forrest's pre-existing customers could pay on their accounts. The events in 1971 constituting the fact, method and timing of the foreclosureallegedly in violation of the 1969 agreementform the bases for Wells and Patterson's complaint.
As the minority shareholders of Forrest, Wells and Patterson filed a stockholder's derivative action alleging that F, I and R and its principals: (1) criminally, willfully, wantonly, fraudulently, negligently and with reckless disregard mismanaged, and permitted mismanagement of, Forrest Discount Company, Inc.; (2) breached its fiduciary duty owed to the plaintiffs; (3) misappropriated corporate funds and assets; (4) diverted Forrest's corporate opportunities; and (5) converted customer accounts and money. They also included a count for $100,000.00 on a $25,750.00 promissory note allegedly executed and delivered to Patterson by Forrest which Forrest was unable to repay because the defendants fraudulently and illegally converted Forrest's assets. F, I and R counterclaimed for the $5,000.00 it loaned Wells enabling him to purchase Reavis's 29 shares of Forrest stock.
The plaintiffs demanded a jury trial, and the defendants filed a motion for an order striking the jury demand on the equitable counts, or otherwise, severing the non-jury claims and limiting the issues to be tried before the jury. On the trial day, moments before the jury was struck, a hearing was held in the judge's chambers on the pretrial motions. The judge overruled the motion to strike the jury demand, and plaintiffs took the conversion count out of the case. The jury returned an $80,000.00 verdict *1343 against F, I and R on the derivative claims and against plaintiffs on the promissory note claim. F, I and R was awarded $5,504.51 on its counterclaim on the loan.
In addition to several other issues, F, I and R asserts on appeal that this case is due to be reversed and remanded because it was improperly tried before a jury. We agree. Rule 23.1, A.R.C.P., allowing a derivative action on the part of one or more shareholders, does not specify whether this cause of action is to be tried before a jury. Therefore, we must consult our state constitution to determine whether there is such a right in derivative action cases. See Rule 38, A.R.C.P.
Ala.Const. of 1901, art. I, § 11 states "That the right of trial by jury shall remain inviolate." Our case law interprets this section to mean that a jury trial is preserved only with respect to those cases which would have been triable by jury at common law. Ex parte W & H Mach. & Tool Co., 291 Ala. 517, 283 So.2d 173 (1973); Shelton v. Shelton, 376 So.2d 740 (Ala.Civ.App. 1979). At common law, purely legal claims were guaranteed the right to a jury trial. Tillery v. Commercial Nat'l. Bank, 241 Ala. 653, 2 So.2d 125 (1941). If the claims were equitable, there was no constitutional right to a trial by jury. Pugh v. Calloway, 295 Ala. 139, 325 So.2d 135 (1976).
The shareholder derivative action is an equitable cause of action. 6 Cavitch, Business Organizations, § 119.01[1]. Being an action in equity, this case would not have been tried before a jury at common law. The trial judge erred in submitting to the jury the derivative claims, denominated in this opinion as (1) through (4), because they are all claims asserted by the shareholders on behalf of the corporation for wrongs allegedly committed against the corporation. 6 Cavitch, Business Organizations, § 119.03[3].
Nevertheless, the claim on Patterson's promissory note was properly tried before the jury because it was a purely legal count asserted by plaintiffs in their individual capacity and was not an issue raised derivatively on behalf of the corporation. To the extent that this was a legal claim, triable by jury at common law, the right to a jury trial is preserved. Likewise, the counterclaim raised by F, I and R on the $5,000.00 note executed to Wells was a legal, rather than an equitable, cause of action, triable by jury.
Our scope of review on the merits of these legal claims is to view the evidence in the light most favorable to the prevailing party. Cooper v. Peturis, 384 So.2d 1087 (Ala.1980). There is a presumption in favor of the correctness of a jury verdict, and this presumption is strengthened by the trial court's overruling a motion for new trial. Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala.1979). Accordingly, we will not disturb the jury's decision on a fact question unless it is plainly erroneous or manifestly unjust. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979).
F, I and R's judgment in the amount of $3,574.36 in damages plus $1,930.15 interest on its counterclaim will be allowed to stand. The jury verdict disallowing Patterson's claim on his junior promissory note, likewise, will be allowed to stand. The terms of the junior note expressly provide that repayment is after any and all presently outstanding, or additional, indebtedness whether secured or unsecured. The term junior was defined to mean that the indebtedness evidenced by the note shall be entitled to payment only after there shall be paid in full all principal and interest due on such superior indebtedness. There was credible evidence that there were other debts owed by Forrest.
Notwithstanding the merger of law and equity in civil cases, the right to a jury trial is preserved only where plaintiff was so entitled at common law unless expressly granted by statute. Thus, it is not uncommon for us to hold, as in this case, that the court without a jury shall try the equitable claims (unless the jury is advisory only), and a jury, if demanded, shall try the legal claims when both are pleaded in the same action. Poston v. Gaddis, 335 So.2d 165 (Ala.Civ.App.), cert. denied, 335 So.2d 169 *1344 (Ala.1979). Accordingly, the judgments on the legal claims are affirmed, and the judgment is reversed and remanded on the shareholder derivative equitable claims.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
TORBERT, C. J., and FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.

On Application for Rehearing
During pendency of the application for rehearing in this cause, our attention was called to the U. S. Supreme Court case of Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), a case not previously cited in briefs of counsel. Ross holds that the right of trial by jury preserved by the 7th Amendment to the U. S. Constitution extends to a stockholder's derivative suit with respect to issues not unlike the triable issues in the instant case. Upon reconsideration, we believe Section 11 of our State Constitution mandates a holding consistent with Ross.
That holding is consistent with Cumens v. Garrett, 294 Ala. 535, 319 So.2d 665 (1975), and Crommelin v. Fain, 403 So.2d 177 (Ala. 1981), upholding jury trial rights in cases having a blend of legal and equitable claims pursuant to Rule 38, A.R.C.P. See, also, Hoffman, Alabama's Right to Trial by Jury Since the Merger of Law and Equity, 32 Ala.L.Rev. 436 (1981). Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), also support this result in their application of the comparable federal rule, Rule 38, F.R.C.P.
Issues presented on appeal which were pretermittedbecause of our original holding favorable to appellants on the right of trial by jury issuehave now been considered. As to the weight and sufficiency of the evidence issue, our restudy of the briefs of counsel and our painstaking review of the evidence of record fail to disclose any basis for overriding the presumption of correctness attending the trial court's order overruling defendant's motion for a new trial.
As to the excessiveness of the verdict issue, however, we find that the highest verdict sustainable by the evidence is $50,000.00. Consequently, our affirmance is conditioned upon the appellees' filing, with the Clerk of this Court, within 21 days from the date of this opinion, a remittitur in the amount of $30,000.00. Otherwise, the judgment will be reversed and the cause remanded for a new trial.
Application for rehearing is granted; the judgment below is due to be affirmed conditionally.
APPLICATION FOR REHEARING GRANTED; AFFIRMED CONDITIONALLY.
TORBERT, C. J., and MADDOX, FAULKNER, JONES, SHORES, BEATTY and ADAMS, JJ., concur.
ALMON and EMBRY, JJ., dissent.
EMBRY, Justice (dissenting):
I respectfully dissent from the majority opinion on rehearing.
At the outset, it should be noted that the Seventh Amendment to the United States Constitution, which serves as the basis of the decision in Ross v. Bernhard, is not applicable to the states. As we observed in U-Haul Company of Alabama v. State, 294 Ala. 330, 316 So.2d 685 (1975):
"* * * the Seventh Amendment * * * applies only to the courts of the United States. * * * The `due process' clause of the Fifth Amendment does not require jury trial in the federal courts; and correlatively the `due process' clause of the Fourteenth Amendment does not require it in the state courts. * * *" 5 Moore's Federal Practice, 138.08[5], pp. 77, 78; Minneapolis & St. Louis Railroad Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961; Iowa Central Railway Co. v. Iowa, 160 U.S. 389, 16 S.Ct. 344, 40 L.Ed. 467; Hardware Dealers' Mutual Fire Ins. Co. of Wisconsin v. Glidden Co., 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214. *1345 Thus, it is only as persuasive authority that the majority relies upon Ross v. Bernhard in concluding that Section 11 of the Alabama Constitution mandates the right to trial by jury in this shareholder's derivative action.
I am not convinced that the rationale of Ross v. Bernhard warrants the weight given it by the majority, or that it can be reconciled with the consistent and clear view expressed, until today, in the Alabama cases which have construed Section 11.
Of particular note is W & H Machine & Tool Co. v. National Distillers and Chemical Corp., 291 Ala. 517, 283 So.2d 173 (1973), an action in assumpsit commenced at law to recover money damages for unpaid debts incurred by a company that was allegedly the alter ego of the defendant, another company. Recognizing that the plaintiff might recover only under an "instrumentality theory," the trial court transferred the case from the law division to the equity division and denied trial by jury.
On appeal, this court acknowledged that "trial by jury is the real issue in contention between the parties." Looking to Const. 1901, § 11, and the cases construing that provision, this court stated:
Article 1, § 11 of the Alabama Constitution of 1901 is a source of the right to jury trial in this state. That section provides:" "That the right of trial by jury shall remain inviolate." * * *.
This provision has been interpreted to provide for jury trial in those classes of cases in which the right existed at common law, or in which it was used at the time of the adoption of the Constitution. Alford v. State, 170 Ala. 178, 188, 54 So. 213, 215 (1911). This embraces all purely legal rights and contentions which were known to the common law and which had no element of equitable cognizance in their composition and in which a trial by jury existed. Tillery v. Commercial National Bank, 241 Ala. 653, 4 So.2d 125 (1941); Montgomery & Florida Ry. v. McKenzie, 85 Ala. 546, 549, 5 So. 322 (1888).
Section 11, supra, however, in no way enlarges the right of jury trial. It does not extend to cases where jury trial was not available as of right prior to the Constitution. State v. Bley, 162 Ala. 239, 50 So. 263 (1909). Nor does it extend to causes totally unknown to the common law or to the statutory law as it existed at the time of the adoption of the Constitution. In re One Chevrolet Automobile, Senior v. State, 205 Ala. 337, 87 So. 592 (1921); Tims v. State, 26 Ala. 165 (1855).
This court then proceeded to analyze the case history of the instrumentality theory in Alabama and, after determining the theory was cognizable only in equity, denied plaintiff's petition for writ of mandamus.
Although the majority in the case sub judice as well as the majority in Ross v. Bernhard freely admit that a shareholder's action was cognizable only in equity and not at common law, the position taken by the majority in Ross v. Bernhard, and presumably by the majority here, is that historical analysis of a particular cause of action as legal or equitable has been necessary simply because of "[p]urely procedural impediments" in the dual system which have been removed by the merger of law and equity under the Federal Rules of Civil Procedure. (That argument is applicable to the instant case because the Alabama Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure. See, Committee Comments, ARCP, Rule 1.)
The fallacy of that contention was aptly identified in Justice Stewart's dissenting opinion in Ross v. Bernhard, joined by Chief Justice Burger and Justice Harlan, as follows:
[A]s we have seen, a derivative suit has always been conceived of as a single, unitary, equitable cause of action. It is for this reason, and not because of "procedural impediments," that the courts of equity did not transfer derivative suits to the law side. In short, the cause of action is wholly a creature of equity. And whatever else can be said of Beacon Theatres and Dairy Queen, they did not cast aside altogether the historic division between equity and law.

*1346 If history is to be so cavalierly dismissed, the derivative suit can, of course, be artificially broken down into separable elements. But so then can any traditionally equitable cause of action, and the logic of the Court's position would lead to the virtual elimination of all equity jurisdiction. * * *.
"[C]ourts of equity did more than simply afford the shareholder entrance to the judicial system; they created a right which they carefully guarded throughout the entire litigation." Note, Jury Trial in a Stockholders' Derivative Suit, 65 Nw.U.L. Rev. at 701 (Sept.Oct. 1979). Thus, treatment of an action as peculiarly and unitarily equitable is not simply a matter of deference to historical form, but involves substantive considerations such as the practical limitations and abilities of a jury to comprehend the issues and make the necessary decisions in certain types of complex corporate litigation. See, Note, Ross v. Bernhard: The Uncertain Future of the Seventh Amendment, 81 Yale L.J. 112 (Nov. 1971). Indeed, the majority in Ross v. Bernhard recognized the "practical abilities and limitations of juries" as one of the factors to be considered in determining the "legal" nature of an issue, but mentioned it only by way of footnote (396 U.S. at 538, n. 10, 90 S.Ct. at 738, n. 10), conveniently failing to include this factor in its substantive analysis.
Also, not to be overlooked are more practical considerations such as the effect of increasing the number of far-more time consuming trials by jury in the face of a growing backlog of cases in the courts, a step which very likely would substantially retard the pace of justice. See, Ross v. Bernhard: The Uncertain Future of the Seventh Amendment, supra.
For the reasons stated, I would hold in accordance with W & H Machine & Tool Co. v. National Distillers and Chemical Corp., supra, and the line of cases cited therein, and grant the right to trial by jury only in actions recognized at common law. Although W & H Machine & Tool Co. was decided under premerger rules, subsequent cases decided under the Alabama Rules of Civil Procedure have reaffirmed the rule enunciated therein. Pugh v. Calloway, 295 Ala. 139, 325 So.2d 135 (1976); Shelton v. Shelton, 376 So.2d 740 (Ala.Civ.App.1979). I remain unconvinced that this rule, carefully wrought by precedent and tested by time, should be so casually abandoned today.
ALMON, J., concurs.