877 So.2d 585 (2003)
Jeffrey WOOTTEN and Marty Wootten
v.
Toney IVEY et al.
Gold Kist, Inc.
v.
Toney Ivey et al.
1011384, 1011385.
Supreme Court of Alabama.
September 19, 2003.
*586 William W. Lawrence and Blake Lazenby of Wootten, Thornton, Carpenter, O'Brien, Lazenby & Lawrence, Talladega, for appellants Jeffrey Wootten and Marty Wootten.
Michael C. Quillen of Walston, Wells, Anderson & Bains, LLP, Birmingham; and Albert L. Shumaker of Shumaker & Rice, Centre, for appellant Gold Kist, Inc.
M. Clay Ragsdale IV, Birmingham, for appellees.
BROWN, Justice.
Jeffrey Wootten, Marty Wootten, and Gold Kist, Inc., appeal from an order of the DeKalb Circuit Court restraining and enjoining them from restocking their hog farm pending the submission of an odor-management plan that meets the court's approval. We reverse and remand.

Facts and Procedural Background
On September 7, 1999, Toney Ivey, Brenda Ivey, and Casey Ivey sued Jeffrey Wootten, Marty Wootten, and Gold Kist, Inc. (hereinafter collectively referred to as "the defendants"), alleging that their land had been damaged as a result of the defendants' operation of a hog farm near the Iveys' property. The Iveys alleged, among other things, that the defendants' operation of the hog farm created a nuisance, and they sought money damages, injunctive relief, and attorney fees. The Iveys' complaint included a general demand for a jury trial. On January 31, 2000, the complaint was amended to add 16 plaintiffs who also claimed to have suffered damage from residing in close proximity to the defendants' hog farm.
On October 2, 2000, a jury trial was conducted and the trial court submitted the nuisance claim and the request for money damages to the jury for deliberation. The trial court gave the jury the following instructions:
"Whether or to what extent the court grants injunctive relief in this case will be based in part on the evidence introduced in this trial as well as evidence which may be presented at a subsequent proceeding, should you find in this case that the hog-feeding operation in question constitutes a nuisance."
--------
"The plaintiffs, having made a claim that the defendants have caused the plaintiffs *587 to suffer damage as a result of a nuisance, and the defendants having denied same, it is for you, the jury, to decide whether the hog-finishing operation in question constitutes a nuisance, whether the plaintiffs have suffered any loss or damage[ ] as a direct result thereof, and whether the defendants, or either of them, are liable therefor."
--------
"The plaintiffs must reasonably satisfy you that the conduct of the defendants constitutes a nuisance. It is for you to decide whether the conduct in question constitutes a nuisance, as I have explained the law of nuisance to you."
--------
"If, after a consideration of all the evidence in this case, you are not reasonably satisfied of the truthfulness of a plaintiff's claim, then your verdict should be for the defendants with respect to that plaintiff's claim. And, of course, in this event you would go no further with respect to that claim. On the other hand, if after a consideration of all the evidence in the case, you are reasonably satisfied of the truthfulness of a plaintiff's claim, your verdict should be for that plaintiff. In this event, it will be necessary for you to arrive at an amount to be awarded in the verdict forms which I will read to you and describe a little later in my charge."
(Emphasis added.)
On October 12, 2000, the jury returned a verdict in favor of the defendants as to each plaintiff's claim for nuisance. Based on the jury's verdict, the trial court, on October 13, 2000, entered a judgment in favor of each of the defendants and against all of the plaintiffs as to the nuisance claim seeking money damages. The plaintiffs filed various posttrial motions, and on January 24, 2001, the trial court amended its October 13, 2000, judgment to add the following statement: "This [October 13, 2000] judgment shall be, and is hereby, deemed a judgment on the damage[s] claims only, and not a judgment on the claims for equitable relief asserted in this case." The court stated that it would determine whether equitable relief was warranted in this case by considering the evidence presented at trial, "together with such other evidence as may be presented by the parties at the hearing hereinafter scheduled." The court explicitly stated that the October 13, 2000, order was not a final order and scheduled an additional hearing to allow the plaintiffs to again attempt to prove to the trial court that the defendants' hog-farming operation constitutes a nuisance.
The trial court then conducted hearings at which additional evidence was presented that had not been presented at trial. The trial court then appointed a special master to monitor the operation of the defendants' hog farm, and the judge and the special master made personal visits to the hog farm. On January 9, 2002, the trial court entered a judgment on the plaintiffs' claim for injunctive relief, finding that the defendants' hog farm constituted a nuisance and enjoining, as of April 1, 2002, the defendants from restocking their hog farm until the defendants submitted an odor-management plan to the trial court and received court approval of the plan. On January 23, 2002, the defendants filed motions to alter, amend, or vacate the trial court's January 9, 2002, judgment.
On February 8, 2002, the defendants submitted an odor-management plan to the trial court. On February 22, 2002, the trial court informed the defendants by letter that their proposed plan, which consisted of approximately 54 pages of material, was insufficient and that they needed to *588 produce more information and detail as to their proposals for odor management. On March 5, 2002, the trial court entered an order postponing from April 1, 2002, to May 1, 2002, the deadline after which the defendants were prohibited from restocking, because of scheduled hearings in the case. On March 21, 2002, the defendants provided the court with supplemental information concerning their proposed odor-management plan. On March 26, 2002, the trial court denied the defendants' motion to alter, amend, or vacate the court's January 9, 2002, judgment. The court then certified its October 13, 2000, judgment and its January 9, 2002, judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. The defendants appealed.

Discussion
The defendants argue that the trial court, by determining that a nuisance existed after the jury had already determined that one did not exist, deprived them of their right to a trial by jury. Specifically, the defendants assert that they were entitled to a jury trial as to the plaintiffs' claim for money damages, although they acknowledge that they did not have a right to a jury trial as to the plaintiffs' claim for injunctive relief. The defendants further contend that, because whether a nuisance existed is a factual issue common to both the legal claim for money damages and the equitable claim for injunctive relief, this factual issue was decided by the jury when it decided the legal claim for money damages. Thus, according to the defendants, because the issue whether a nuisance existed was properly submitted to and decided by the jury, the jury's findings on that issue are binding on the trial court in determining whether to grant equitable relief. We agree.
This Court has long recognized that Article I, § 11, Constitution of Alabama of 1901, provides the right to a jury trial in those cases that involve purely legal claims.[1] See Ex parte Thorn, 788 So.2d 140, 142 (Ala.2000)(quoting W & H Mach. & Tool Co. v. National Distillers & Chem. Corp., 291 Ala. 517, 520, 283 So.2d 173, 175-76 (1973)(citing in turn Tillery v. Commercial Nat'l Bank, 241 Ala. 653, 4 So.2d 125 (1941); Alford v. State, 170 Ala. 178, 188, 54 So. 213, 215 (1911); Montgomery & Florida Ry. v. McKenzie, 85 Ala. 546, 549, 5 So. 322 (1888))); see also Rule 38, Ala. R. Civ. P. It is equally well settled that the constitution does not provide a right to a jury trial for the resolution of factual issues for parties alleging equitable claims. See Ex parte Thorn, 788 So.2d at 143 (citing Finance, Inv. & Rediscount Co. v. Wells, 409 So.2d 1341, 1343 (Ala.1981)(citing in turn Pugh v. Calloway, 295 Ala. 139, 325 So.2d 135 (1976))). However, since the merger of law and equity in 1973 with the adoption of the Alabama Rules of Civil Procedure, see Rule 2, Ala. R. Civ. P., courts have been presented with cases that contain both issues to be tried by a jury and issues to be tried by the court. In those cases, the test for determining whether a party has a right to a trial by jury is: "`[I]f an issue is of a sort which [before the adoption of the Alabama Rules of Civil Procedure] would have been tried to a jury, then the party has a constitutional right ... to have it tried to a jury under the merged procedure." Ex parte Thorn, 788 So.2d at 143 (quoting Committee Comments to Rule 38, Ala. R. Civ. P.).
*589 When legal and equitable claims are presented in one action, the trial court must resolve the equitable claims in a way that does not impinge on a party's right to a jury trial as to the legal claims. See Ex parte Taylor, 828 So.2d 883 (Ala.2001); Ex parte Thorn, 788 So.2d at 140. Purely legal claims, as well as factual issues common to the legal and equitable claims, must be determined by a jury; the remaining issues are then to be decided by the trial court. See Ex parte Taylor, 828 So.2d at 883; Ex parte Thorn, 788 So.2d at 140.
"Accordingly, when both legal and equitable claims are joined in one action, then, the trial judge must arrange the order of trial so that the judge's decision on the equitable issues does not operate to deny a trial by the jury of the legal issues. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (stating that `only under the most imperative circumstances, ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims'); accord Crommelin v. Fain, 403 So.2d 177, 185 (Ala.1981). A jury first must decide any factual issues that are purely legal in nature, along with any factual issues common to the legal and equitable claims. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (holding that because the factual issues relating to the petitioner's breach of contract claim `[were] common with those upon which [the] respondents' claim to equitable relief [was] based, the legal claims involved in the action [had to] be determined prior to any final court determination of respondents' equitable claims'); see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2302.1, at 29 (2d ed.1995); 1 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated § 2.2 at 24 (3d ed. 1996) (`[Beacon Theatres] held that the questions of fact common to the legal and equitable [claims] must be decided first by the jury, for to permit the court to make findings on these common issues of fact would deprive the litigant of his right to [a] jury trial.'). Once those factual findings are made, the trial judge must determine the remaining equitable issues. See Dairy Queen, 369 U.S. at 470, 82 S.Ct. 894.
"... In addition, those factual questions that are purely legal in nature, as well as those common to the legal and equitable issues, must first be decided by the jury. Dairy Queen, Inc., supra."
Ex parte Thorn, 788 So.2d at 144-45 (emphasis added).
In this case, the factual issue  whether the operation of the hog farm constituted a nuisance  is an issue common to both the plaintiffs' legal claim and their equitable claim. Thus, as the above-quoted excerpts from the jury instructions demonstrate, the trial court correctly submitted this issue to the jury. The jury, by returning a verdict in favor of the defendants as to each plaintiff's nuisance claim, determined that the plaintiffs failed to prove that a nuisance existed. Because the jury found that there was no nuisance  the factual issue common to both the legal claim and the equitable claim  the trial court was bound by the jury's resolution of that common factual issue in determining whether to grant equitable relief. In other words, the jury's factual determination that a nuisance did not exist foreclosed the trial court's ability to grant injunctive relief based on the plaintiffs' nuisance claim.
The plaintiffs and the dissenting opinion contend that the jury verdict in this case was not dispositive of the issue whether *590 the defendants' hog farm constituted a nuisance. In support of this argument, the plaintiffs cite only one case, Fisher v. Space of Pensacola, Inc., 461 So.2d 790 (Ala.1984). We note that Fisher addresses the preclusion of an issue in the context of the doctrine of collateral estoppel. Without more explanation than the plaintiffs supplied in their brief, it is unclear how Fisher controls the issue in this case.
As to the dissent's assertion that this Court has no basis from which to conclude that the jury found that the hog farm was not a nuisance, it is clear from the jury instructions quoted earlier that the jury was actually charged with determining whether the defendants' hog farm constituted a nuisance. Furthermore, the trial court's instructions made clear to the jury that the court's consideration of injunctive relief depended upon the jury's determination of whether a nuisance existed:
"Whether or to what extent the court grants injunctive relief in this case will be based in part on the evidence introduced in this trial ..., should you find in this case that the hog-feeding operation in question constitutes a nuisance."
(Emphasis added.)
Thus, the trial court clearly stated that whether injunctive relief would be granted depended upon the jury's determination of whether the hog farm constituted a nuisance. The trial court later instructed the jury:
"If, after a consideration of all the evidence in this case, you are not reasonably satisfied of the truthfulness of a plaintiff's claim, then your verdict should be for the defendants with respect to that plaintiff's claim. And, of course, in this event you would go no further with respect to that claim. On the other hand, if after a consideration of all the evidence in the case, you are reasonably satisfied of the truthfulness of a plaintiff's claim, your verdict should be for that plaintiff. In this event, it will be necessary for you to arrive at an amount to be awarded in the verdict forms which I will read to you and describe a little later in my charge."
(Emphasis added.)
The verdict forms provided to the jury for each plaintiff's claim allowed the jury the following options: 1) Find in favor of the plaintiff against all defendants and then assess compensatory and punitive damages, if any; 2) find in favor of the plaintiff against some of the defendants and then assess compensatory and punitive damages, if any; or 3) find in favor of all of the defendants against the plaintiff. The jurors chose the third option, finding in favor of all of the defendants. The law is well settled that this Court will presume that the jury followed the trial court's instructions unless there is evidence to the contrary. See Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 31 (Ala.1998); Holland v. City of Alabaster, 572 So.2d 431, 433 (Ala.1990). It is reasonable to conclude from the jury instructions given in this case that the jurors, for whatever reason, were not persuaded of the truthfulness of the plaintiffs' claim that the defendants' hog farm constituted a nuisance. Thus, in determining the plaintiffs' claim for equitable relief based on the alleged nuisance, the trial court was bound by the jury's finding that the hog farm did not constitute a nuisance.

Conclusion
The trial court correctly submitted the issues of the existence of a nuisance and money damages to the jury; however, once the jury decided that the hog farm did not constitute a nuisance, the trial court erred in entering an order enjoining the defendants from restocking their hog farm pending the submission and approval *591 of an odor-management plan. Therefore, the trial court's judgment in this case is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, HARWOOD, and STUART, JJ., concur.
JOHNSTONE and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The general verdicts in favor of the defendants on the plaintiffs' nuisance claims do not signify that the jury did not find a nuisance. The general defense verdicts signify only that the jury did not find the coexistence of all three essential elements of the nuisance claims: nuisance, proximate causation, and damages.
If a jury does not find the existence of one of the essential elements of a claim, then the jury is bound by law to return a defense verdict, even though the jury may have found the existence of all of the other essential elements. A general verdict does not reveal which essential element the jury has not found to exist.
In the case before us, the jury charge presented the nuisance claims to the jury in terms of three essential elements: the nuisance itself, R. 1354-57; proximate causation, R. 1357-58; and damage, R. 1354-59. The jury charge conditioned plaintiffs' verdicts on findings of all three of these essential elements. (R. 1359.)
The jury charge did not instruct the jurors that they could return a verdict for nominal damages or any sum whatsoever for the plaintiffs on the basis of a finding of nuisance without a finding of compensable damage too. A zero verdict based on a nuisance finding without a compensable damage finding would, of course, have been illegal. Ward v. Diebold, Inc., 486 So.2d 1261 (Ala.1986).
Thus, for aught that appears from the defense verdicts in this case, they are attributable only the absence of a finding of compensable damage. Indeed, a question asked by the jury reveals that the jurors recognized a nuisance "problem" but doubted the efficacy of the remedy of money damages:
"Can we award punitive damages toward the fixing of the problem rather than to the plaintiffs? If the money is awarded to the plaintiffs, the problems are still going to be there." (R. 1385.)
The trial court correctly responded by giving the jury the essence of the pattern jury instructions on compensatory and punitive damages and again telling the jury that, "[w]hether injunctive relief is to be granted and/or the extent or form which any such relief might take is not a matter for your concern." (R. 1386.)
The general verdict returned by the jury against the plaintiffs supplies us with no basis to conclude that the jury found the hog farm not to be a nuisance. Nor did the trial court submit to the jury any special interrogatory seeking or allowing a jury finding on the element of nuisance alone. Therefore no such finding foreclosed the trial court from finding a nuisance and granting injunctive relief.
I express no opinion on the issue of whether the plaintiffs' claims for both money damages and injunctive relief based on the common issue of nuisance originally entitled the defendants to a jury determination on that common issue. In a post-judgment brief to the trial court, the defendant Gold Kist waived any right to a jury trial of any element of the plaintiffs' claim for injunctive relief:

*592 "The Court tried the plaintiffs' equitable claims with the jury acting as an advisory jury.... Defendant Gold Kist recognizes that a trial judge, called upon to decide an equitable claim, is not bound to accept a finding of fact made by an advisory jury." (C.R.684.)
At this stage of the proceedings, the other defendants too have waived any such right. The plaintiffs' money damage claim has been concluded with no identifiable jury finding on the issue of nuisance and with no insistence by the defendants that the jury make such a finding by special interrogatory or other procedure. Now the jury is gone, as is the money damage claim that warranted the jury trial in the first place.
WOODALL, J., concurs.
NOTES
[1] Ala. Const.1901, Art. I, § 11, provides: "That the right of trial by jury shall remain inviolate."