THOMAS, Judge.
 

 Constance J. Smith (“the former wife”) appeals from a judgment imposing a resulting trust in favor of Flowerwood Nursery, Inc. (“Flowerwood”), on property in which she claims an interest. We affirm.
 

 The former wife and Gregory L. Smith (“the former husband”) were divorced in 2001. This is the second time they have been before this court. For an understanding of the facts and procedural history underlying this appeal, we quote from this court’s decision in
 
 Smith v. Smith,
 
 892 So.2d 384 (Ala.Civ.App.2003) (hereinafter referred to as
 
 “Smith I
 
 ”):
 

 “The trial court incorporated into the divorce judgment an agreement the parties had reached as the result of mediation. After providing for the division of the parties’ retirement accounts, the division of certain real property, the allocation of various items of personal property, and the husband’s payments to the wife of alimony in gross, the agreement recites, in paragraph 9:
 

 “ ‘Each party shall keep any other account and any other property presently in their individual names with Wife disclaiming any and all interest she may have in any interest in which Husband owns in any business or other property including, but not limited to, Flowerwood Nursery of Alabama, Flowerwood Nursery of Georgia, Flowerwood Liners, PDSI, Summit Landscaping, Inc. and Flowerwood Management.’
 

 “The agreement requires the parties to ‘execute all necessary documents to carry out the provisions of their agreement.’
 

 “After the divorce, the husband sought to have the wife execute a quitclaim deed transferring to him her interest in a 19-acre parcel of real property located in Baldwin County and used in connection with the operation of the husband’s business, Flowerwood Nursery. The wife refused to execute a quitclaim deed; instead, she filed suit in Baldwin Circuit Court seeking a sale for division of the 19-acre parcel.
 

 “In July 2003, the husband filed an action seeking a judgment declaring that he had been awarded the 19-acre parcel
 
 *537
 
 by virtue of paragraph 9 of the agreement incorporated into the divorce judgment; he also filed a motion to enforce the divorce judgment, seeking to compel the wife to execute a quitclaim deed to the property. The wife answered, alleging that she still had an interest in the 19-acre parcel that she had not relinquished by agreeing to paragraph 9 of the agreement. Following a hearing, the trial court held that, pursuant to paragraph 9 of the agreement, the husband had been awarded the disputed property; the court ordered the wife to execute, within 30 days of the entry of its judgment, the necessary deed to convey title to the husband. The wife appeals.
 

 [[Image here]]
 

 “Apparently, the trial court concluded that paragraph 9 of the agreement incorporated into the divorce judgment was ambiguous because it held a hearing and received parol or extrinsic evidence concerning the parties’ intent with regard to the ownership of the 19-acre parcel. The record contains a deed, dated August 17, 1988, and recorded on August 22, 1988, conveying the disputed property from Charles W. Barnhill and Virginia P. Barnhill, husband and wife, to the husband and the wife, as joint tenants with the right of survivorship. The record also contains an unrecorded instrument dated August 18, 1988, and signed by the husband and wife, which reads as follows:
 

 “ ‘Deed Correction
 

 “ ‘WHEREAS the Flowerwood Nursery paid a sum of $69,000 to Barnhill for a parcel of land ..., and said land was incorrectly titled in the name of Gregory L. Smith, Jr., and Connie J. Smith, and
 

 “ ‘WHEREAS it is intended that the land be used by Flowerwood Nursery in its growing operations, and
 

 “ ‘WHEREAS it is not intended that the Smiths benefit from or dispose of said property without proper compensation to Flowerwood,
 

 “ ‘NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS that Gregory L. Smith, Jr., and Connie J. Smith, for and in consideration of the sum of Ten Dollars ($10.00), agree that for a period of Ninety-Nine years they shall sell said parcel to NONE OTHER THAN Flowerwood Nursery, Inc., a corporation of Alabama, and shall sell said parcel at a price of Ten Dollars ($10.00). In the event of their deaths, said property will automatically be transferred as if sold as described above.
 

 “‘IT IS FURTHER AGREED that Gregory L. Smith, Jr. and Connie J. Smith shall not use said property without paying Flowerwood Nursery a rate of thirty five hundred dollars per acre for the amount used by them, and agree further that at this time true and correct deeding shall be executed and recorded, reflecting a correct ownership of, and payment for, said parcel.
 

 “ 7s/ Gregory L. Smith Jr.
 

 “ ‘/s/ Connie J. Smith’
 

 “The husband testified that Flower-wood Nursery is a corporation owned by his family; that in 1988 he was the corporate secretary; and that he is now the president and general manager. He presented evidence that Flowerwood Nursery had paid for the 19-acre parcel in 1988; that it had listed the property as a capital asset on its books since that time; that it had made numerous improvements to the property; and that the property was essential to its busi
 
 *538
 
 ness operations. The husband testified that the August 17, 1988, deed from the Barnhills was the result of a tax-free exchange. He explained that naming the wife and him as grantees in the deed was a ‘mistake’ and that, therefore, he had typed a document that he called a ‘Deed Correction’ the following day, August 18, 1988. The husband acknowledged that the ‘Deed Correction’ did not purport to transfer title to the property to Flowerwood Nursery and that the parties never executed another deed conveying the property to Flowerwood Nursery. The husband conceded that his argument that the wife had no interest in the property was based solely on paragraph 9 of the agreement incorporated into the divorce judgment. The wife testified that she did not read the deed correction instrument before she signed it on August 18, 1988, but, she said, she signed it because the husband had asked her to do so. The wife stated that the husband had told her that the purpose of the deed correction document ‘was to protect the nursery from lawsuits, and that was good enough tor [her].’ ”
 

 Smith I,
 
 892 So.2d at 385-87.
 

 In
 
 Smith
 
 /, a
 
 majority of
 
 this court held that paragraph 9 of the divorce judgment was not ambiguous and that
 

 “at the time of the divorce, the wife was a joint tenant with the husband in the 19-acre parcel; that paragraph 9 did not operate to disclaim her interest in that property; and that the wife retains her interest in the 19-acre parcel.”
 

 892 So.2d at 389. After this court issued its opinion in
 
 Smith I,
 
 the former husband filed a petition for a writ of certiorari with the Alabama Supreme Court. That court initially granted the petition, but, on May 28, 2004, it quashed the writ.
 

 On September 7, 2004, Flowerwood filed a complaint in intervention in the former wife’s 2002 Baldwin Circuit Court action in which she had requested an accounting and a sale for division of the 19-aere parcel. Flowerwood’s complaint alleged that it had supplied the purchase money for the Smiths’ 1988 purchase of the 19-acre parcel, that it had thereafter listed the property as a capital asset on its books, that it had made substantial capital improvements to the property, and that the property was essential to its nursery operations. Accordingly, Flowerwood requested the following alternative relief: that the court construe the parties’ August 18, 1988, deed-correction instrument as a real-estate purchase contract and order the property to be sold to Flowerwood pursuant to the terms of that instrument, or that the court construe the deed-correction instrument as an equitable mortgage, or that the court impose a constructive trust on the 19-acre parcel in favor of Flowerwood. On January 24, 2006, Flowerwood amended its complaint to request that the court impose a resulting trust in its favor.
 

 On March 30, 2005, the former wife answered Flowerwood’s complaint in intervention, seeking reasonable rents and an accounting and alleging that Flowerwood was guilty of conversion and conspiracy. On June 6, 2007, the circuit court conducted a bench trial. The former husband testified that he and the former wife had obtained the disputed 19-acre parcel by deed from Charles W. Barnhill and Virginia P. Barnhill on August 17, 1988. He said that the transaction was a tax-free exchange, pursuant to 26 U.S.C. § 1031, whereby he and the former wife received the 19-acre parcel in exchange for convenience-store property on Dauphin Island Parkway plus $70,129.50. The former husband stated that he had put up $1,000 of that sum as earnest money and that the balance had come from a money-market
 
 *539
 
 account owned by Flowerwood. He introduced a personal check for $1,000 drawn on an account in his name only and a cashier’s check for $69,129.50 from the Flowerwood account. He also introduced the Flowerwood general ledger containing a journal entry for August 17, 1988, showing a debt receivable from the former husband for $69,129.50. The former husband explained that he had intended the grantee named in the deed to the 19-acre parcel to be Flowerwood, but, he said, the title company had informed him that, because the transaction was a § 1031 exchange, the grantees had to be the former wife and him. Accordingly, he said, he had drafted the deed-correction instrument the day after the closing in order to protect Flower-wood. The former husband stated that, at the end of the 1988 tax year, the Flower-wood ledgers were changed to reflect that the 19-acre parcel was a Flowerwood capital asset.
 

 The former husband testified that, after acquiring the 19-acre parcel, Flowerwood began to make improvements to the property, beginning with the construction of a large pond to provide water for irrigation of the plants grown on Flowerwood properties. He said that the former wife knew of the improvements and made no objection. The former husband estimated that Flowerwood had spent $561,824.09 on improvements, including the construction of a pond; the digging of wells and the installation of pumping devices; the creation of an underground piping and irrigation system; the construction of a shade house, a guard house, and a potting house; the installation of a pot-cleaning machine and a hopper; and the creation of growing beds.
 

 The former wife acknowledged that she had read and voluntarily signed the deed-correction instrument because the former husband had told her that the document was to “protect Flowerwood.” She explained that, during her marriage to the former husband, what had benefited Flow-erwood had benefited her. She also acknowledged that, despite the fact that legal title to the 19-acre parcel was held in the names of the former husband and her, she had not objected to Flowerwood’s use or improvement of the property. Finally, she agreed that Flowerwood had paid the Barnhills $69,129.50 for the property.
 

 On June 27, 2007, the circuit court entered a judgment containing the following findings of fact and conclusions of law:
 

 “1. On August 17, 1988, [the former wife] and [the former husband] were conveyed the record title to certain real property in Baldwin County, Alabama, more particularly described as follows:
 

 “ ‘The South Half of the Northeast Quarter of the Southeast Quarter of Section 3, Township 5 South, Range 3 East, Baldwin County, Alabama.’
 

 “Said lands are hereinafter referred to as ‘the Property.’
 

 “2. The trial testimony was without dispute that the funds for the purchase of the Property were supplied by and for the use and benefit of Intervenor Flow-erwood Nursery, Inc., and not as a gift or loan to [the former wife] and [the former husband]. Title was taken in the names of [the former wife] and [the former husband] in accommodation to the grantors of the Property who were seeking a tax-free exchange. From the date of conveyance, [Flowerwood] has used the property for its benefit and has made substantial improvements thereon.
 

 “3. [The former wife] and [the former husband] held the property in recognition of, and not adverse to, [Flower-wood] at least until them divorce in [2001], The Court specifically finds from the evidence that [the former wife] and [the former husband] periodically and continually recognized [Flower-
 
 *540
 
 wood’s] interest in the Property by having actual knowledge of improvements constructed thereon without objection or complaint. [Flowerwood’s] claims are therefore not barred by the ten-year statute of limitations in actions for the recovery of land.
 

 “4. Where one pays for the purchase of real property conveyed to another, there is a presumption that the latter holds the property for the benefit of the former. [Flowerwood] has proven that it is entitled to the beneficial interest of the property, and [the former wife] has failed to rebut the presumption.
 

 “5. Based on the foregoing, the Court imposes a resulting trust on the Property held by [the former wife] and [the former husband], as trustees for the benefit of [Flowerwood], divests all of [the former wife’s] and [the former husband’s] interests in the Property and grants title to the property in fee simple absolute to Intervenor Flowerwood Nursery, Inc.
 

 “6. Having ruled in favor of [Flower-wood] on its resulting trust claim, all other claims by all parties are dismissed.”
 

 The former wife appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to § 12-2-7(6), Ala.Code 1975. On appeal, the former wife argues that the circuit court erred (1) by imposing a resulting trust in favor of Flowerwood when, she says, Flowerwood’s claim was barred by the statutory limitations period; (2) by striking her jury demand; and (3) by imposing a resulting trust as to the entire property when, she says, Flowerwood did not pay the entire purchase price.
 

 I.
 

 In
 
 Woodard v. Funderburk,
 
 846 So.2d 363 (Ala.Civ.App.2002), this court discussed the principles underlying the imposition of a resulting trust:
 

 “ ‘A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property.’
 

 “5 William F. Fratcher & Austin W. Scott,
 
 The Law of Trusts,
 
 § 404.1 at 6 (4th ed.1989). A purchase-money resulting trust is implied in law when one person pays for the purchase of land and title is taken in the name of another.
 
 See, e.g., Lauderdale v. Peace Baptist Church,
 
 246 Ala. 178, 180, 19 So.2d 538, 539 (1944).
 
 See generally
 
 George G. Bogert and George T. Bogert,
 
 The Law of Trusts and Trustees
 
 § 454 (rev.2d ed.1991); Fratcher & Scott,
 
 The Law of Trusts,
 
 § 440.
 

 “ ‘The principle has its foundation in the natural presumption that one who supplies the purchase money intends the purchase to be for his own benefit and not for another, and when the conveyance is taken in the name of another the presumption usually arises that the grantee is holding the land in trust for the purchaser.’
 

 “Rodgers v. Thornton,
 
 254 Ala. 66, 68, 46 So.2d 809, 810 (1950).
 

 “ ‘This resulting trust depends for its existence on the actual intent of the creator, expressed in acts other than writing or the spoken word. The conduct of the payor with reference to the price and deed lead the court to infer an intent to have a trust for himself. The theory of enforcement is that of carrying out the intent of the settlor, just as truly as if he had reduced his trust to writing and inserted it in the deed. Resulting trusts are
 
 *541
 
 “intent enforcing” just as much as are the usual express trusts. They bear little or no relationship to constructive trusts, which do not arise out of intent but depend for their existence on the wrongful conduct of the defendant which induces a court to adjudge him a trustee.’
 

 “Bogert, § 454 at 249.”
 

 Woodard v. Funderburk,
 
 846 So.2d at 368.
 

 The statute of limitations for seeking the imposition of a resulting trust in land is 10 years.
 
 Haavik v. Farnell,
 
 264 Ala. 326, 87 So.2d 629 (1956);
 
 Henslee v. Merritt,
 
 263 Ala. 266, 82 So.2d 212 (1955); and
 
 Knowles v. Canant,
 
 255 Ala. 331, 51 So.2d 355 (1951). “ ‘When a trust is imposed by law, as in the case of a resulting trust, the statute begins to run in favor of the holder of the legal title against the equitable owner at the time of the conveyance, if there is no recognition of the [beneficiary’s] rights; if his rights are recognized, then at the timp when the holder of the legal title begins to hold adversely.” ’
 
 Haney v. Legg,
 
 129 Ala. 619, 627, 30 So. 34, 36 (1901) (enforcing a trust after more than 35 years) (quoting 2 Perry,
 
 Trusts
 
 § 865 (5th ed. 1899)). The statutory limitations period does not begin to run upon an action to establish a resulting trust so long as there is a recognition of the trust by the trustee.
 
 Henslee v. Merritt,
 
 supra;
 
 Sykes v. Sykes,
 
 262 Ala. 277, 78 So.2d 273 (1954); and
 
 Jacksonville Public Serv. Corp. v. Profile Cotton Mills,
 
 236 Ala. 4, 180 So. 583 (1938).
 

 Flowerwood’s complaint in intervention was filed on September 7, 2004— 16 years after the August 17, 1988, deed from the Barnhills to the Smiths. Nevertheless, we hold that the circuit court did not err in concluding that Flowerwood’s claims were not barred by the 10-year statute of limitations. The former wife’s testimony at trial demonstrates that, from the time she signed the deed-correction instrument in 1988 until she and the former husband were divorced in 2001, she recognized and acknowledged Flower-wood’s superior right to and ownership of the 19-acre parcel and asserted no hostile claim to the property.
 
 See Haney
 
 v.
 
 Legg,
 
 129 Ala. at 626, 30 So. at 36 (stating that “no hostile claim was asserted by the husband, but a distinct and unqualified admission by him of [his wife’s] superior right and ownership. Manifestly, on this state of facts, the statute of limitations which is founded upon an adverse, hostile claim of ownership, is no defense.”).
 

 II.
 

 The former wife argues that the circuit court erred by striking her jury demand. A trial court “should exercise its discretion liberally in favor of granting a jury trial in the absence of strong and compelling reasons to the contrary.”
 
 Fuino v. Morrow,
 
 427 So.2d 710, 712 (Ala.Civ.App.1983). The standard of review applicable to a trial court’s striking a party’s jury demand is whether the court’s action clearly exceeded the limits of its discretion.
 
 See Dorcal, Inc. v. Xerox Corp.,
 
 398 So.2d 665, 669 (Ala.1981).
 

 “When legal and equitable claims are presented in one action, the trial court must resolve the equitable claims in a way that does not impinge on a party’s right to a jury trial as to the legal claims. Purely legal claims, as well as factual issues common to the legal and equitable claims, must be determined by a jury; the remaining issues are then to be decided by the trial court.”
 

 Wootten v. Ivey,
 
 877 So.2d 585, 589 (Ala.2003) (citations omitted).
 

 On May 24, 2002, the former wife filed a complaint for an accounting and a sale for division of the property, and
 
 *542
 
 she demanded a struck jury. A complaint for an accounting states a claim for equitable relief,
 
 see Boyett’s, Inc. v. Gross,
 
 276 Ala. 452, 459, 163 So.2d 610, 617 (1964);
 
 Martin Stamping & Stove Co. v. Manley,
 
 260 Ala. 112, 121, 69 So.2d 671, 679 (1953), for which a trial by jury is not available,
 
 see Wootten v. Ivey,
 
 877 So.2d at 588. Similarly, a complaint seeking a sale for division of real property that presents no issue as to the plaintiffs title and does not allege that the defendant is denying the plaintiffs title and claiming title in himself seeks only equitable relief.
 
 See Brown v. Bateh,
 
 331 So.2d 671, 676 (Ala.1976) (stating that “[wjhere land cannot be partitioned equitably, an equity court has jurisdiction to sell it for division among the joint owners or tenants in common”);
 
 Ex parte Nixon,
 
 239 Ala. 306, 195 So. 228 (1940). The former wife’s complaint alleged that she and the former husband were tenants in common of the property and that “the property ... [could] not be equitably partitioned or divided in kind between the tenants in common without a sale thereof.” Because the former wife’s complaint presented no issue with respect to title and did not aver that the former husband was denying her title, the former wife’s sale-for-division claim was equitable and she was not entitled to a trial by jury.
 

 On July 16, 2002, however, the former husband answered the former wife’s complaint and denied her interest in the property, thereby placing the question of title to the property at issue. The former husband could have demanded a jury trial.
 
 See Ex parte Clark,
 
 643 So.2d 977, 978 (Ala.1994) (stating that “[a] defendant in an action for partition of real estate or for the sale of real estate for a division of the proceeds, who denies the plaintiffs title or sets up an adverse claim, is entitled to a jury trial on demand, if the demand complies with Rule 38(b), Ala. R. Civ. P.; Ala. Code 1975, § 6-8-1”);
 
 Freeney v. Stallworth,
 
 344 So.2d 752, 753-54 (Ala.1977). The former husband, however, did not demand a jury trial. At that point, with the question of title having been put at issue, the former wife could have demanded a jury trial if she had filed her demand within 30 days of being served with the former husband’s answer, but she did not, and she thereby waived her right to a trial by jury pursuant to Rule 38(d), Ala. R. Civ. P.
 
 See Ex parte Clark,
 
 643 So.2d at 978 (stating that “[i]n the context of an action seeking a sale for division, Rule 38(b) requires that the party make the jury demand within 30 days after the service of the last pleading pertaining to the issues on which the jury trial is demanded”).
 

 On September 7, 2004, Flowerwood filed a complaint in intervention seeking purely equitable relief; Flowerwood did not demand a jury trial. On March 24, 2005, the former husband filed a motion to strike the former wife’s jury demand. On March 30, 2005, more than six months after the service of the complaint in intervention, the former wife answered Flower-wood’s complaint in intervention, counterclaimed seeking an accounting and alleging conversion and conspiracy, and demanded a jury trial. On April 28, 2005, Flowerwood joined the former husband’s motion to strike the former wife’s jury demand. On October 20, 2005, the circuit court granted the motion to strike the former wife’s jury demand.
 

 Although the former wife’s counterclaim alleging conversion and conspiracy would appear to have stated “new legal issues,” thereby entitling her to a trial by jury on those issues,
 
 see Ex parte Twintech Indus., Inc.,
 
 558 So.2d 923, 925 (Ala.1990), the conversion and conspiracy claims were actually derivative of and dependent upon the former wife’s having
 
 title
 
 to the property, an issue upon which the former wife
 
 *543
 
 had already waived her right to a trial by jury by failing to demand a jury trial in response to the former husband’s answer to her complaint seeking a sale for division. Cf
 
 . Curry v. Pyramid Life Ins. Co.,
 
 271 F.2d 1 (8th Cir.1959), (holding that the failure to demand a jury trial in an answer will lead to a waiver of the right to a jury trial and that a subsequent counterclaim on the same issue will not revive the right to a jury trial already waived as to that issue).
 

 With respect to conversion, the former ■wife’s counterclaim alleged the following:
 

 “1. [Flowerwood] has taken possession of the real property made the basis of this cause and has exercised dominion and control to the exclusion of the [former wife],
 

 “2.
 
 [Flowerwood] has used the said real property to make money for its business enterprise by removing water therefrom and appropriating such water, which is the personal property of the [former wife], to its own use and benefit to the exclusion of the right of the [former wife],
 

 “3. [The former wife] has received nothing from [Flowerwood] as compensation for the taking of her personal property and has therefore suffered damage.”
 

 The foregoing allegations are dependent upon the former wife’s having
 
 title
 
 to the disputed property, a question put in issue by the former husband’s answer to the former wife’s complaint seeking a sale for division of the property and a question upon which the former wife had already waived her right to a jury trial.
 

 With respect to conspiracy, the former wife’s counterclaim alleged the following:
 

 “1.
 
 [Flowerwood] and the [former husband] have conspired by unlawful, oppressive and/or immoral means to deprive the [former wife] of the rightful and lawful benefit of her real and personal property; and
 

 “2. [Flowerwood] and the [former husband] have conspired to cause [Flow-erwood] to make claims against the [former wife] in an effort to avoid and/or otherwise change the effects of the rulings of the Alabama Court of Civil Appeals and the Supreme Court of Alabama, which both held [the former wife] to be the lawful title owner of a one-half undivided interest in and to the real property that is the basis of this cause of action; and
 

 “3. [Flowerwood] and the [former husband] have conspired to cause [Flowerwood] to make claims against the [former wife] in an effort to avoid and/or otherwise change the effects of the rulings of the Alabama Court of Civil Appeals and the Supreme Court of Alabama, which both held that the ‘Correction Deed’ relied upon by [Flower-wood] in making these claims, was a nullity, was void and in no way effective in transfer of any interest in the real property made the basis of this cause; and
 

 “4. [The former wife] has been damage[d] by the acts in conspiracy by and between [Flowerwood] and the [former husband].”
 

 The former wife’s conspiracy allegations are also dependent upon her having
 
 title
 
 to the disputed property, an issue upon which the former wife waived her right to a trial by jury by failing to demand a jury trial within 30 days of being served with the husband’s answer to her complaint seeking a sale for division of the property. In addition, the former wife’s allegations regarding the import of this court’s decision in
 
 Smith I
 
 are factually and legally incorrect. In
 
 Smith I,
 
 this court held that paragraph 9 of the Smiths’ divorce judg
 
 *544
 
 ment disclaimed only any
 
 legal
 
 interest the wife had in the disputed property; this court did not purport to decide equitable interests in the property because that issue was not before us. In addition, in
 
 Smith I
 
 this court did not hold that the deed-correction instrument was “a nullity” or “void” for all purposes. Instead, we held that the instrument “[did] not meet the requirements for a valid
 
 conveyance
 
 in Alabama,” and that,
 
 as an instrument of conveyance,
 
 it was void.
 
 Smith I,
 
 892 So.2d at 388 (emphasis added). The question whether the deed-correction instrument was relevant for some other purpose, such as whether it is illustrative of the parties’ intent with respect to the purchase of the 19-acre parcel, was not before us in
 
 Smith I.
 

 We conclude that the circuit court did not exceed the limits of its discretion in striking the fox-mer wife’s jury demand.
 

 III.
 

 The former wife maintains that the circuit coui’t erred by imposing a resulting ti'ust in favor of Flowerwood as to the entire property when the evidence indicated that Flowei*wood did not pay the entire purchase price. She claims that, because the former husband contributed $1,000 of the total purchase price of $70,129.50 for the property, she and the former husband still own 1.426% of the property.
 

 “[I]t is not indispensable that the whole of the purchase money should have been paid out of the funds of complainant. Any portion of money of the other used in the pui’chase of property raises a resulting trust in favor of the owner of moneys used to
 
 the extent of the sum so used.”
 

 Jacksonville Public Serv. Corp. v. Profile Cotton Mills,
 
 236 Ala. at 9, 180 So. at 587 (emphasis added).
 

 The former wife’s argument that she should receive part of the former husband’s proportionate share of the purchase price of the property seems to ignore the undisputed evidence indicating that the former husband’s $1,000 earnest-money check was drawn on his individual account and not on a joint account with the former wife. Nevertheless, the former wife cites
 
 Mayo v. Gortney,
 
 468 So.2d 147, 149 (Ala.1985), for the proposition that when a husband pays the purchase price for land and takes title in the name of his wife, the law presumes that the husband intends to make a gift to the wife. The circuit court, however, clearly found that, if that presumption existed, it had been rebutted; the court determined that “the funds for the purchase of the propei'ty were supplied ...
 
 for the use and benefit of [Flower-wood] and, not as a gift
 
 or loan
 
 to [the former wife
 
 ].” (Emphasis added.) We hold that the former wife has no proportionate interest in the 19-acre parcel.
 

 The judgment of the Baldwin Circuit Coui't is affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN and MOORE, JJ., concur.
 

 PITTMAN, J., recuses himself.