The petitioner, Tommy J. Gillentine, filed this petition for a writ of habeas corpus directing Judge John H. Bentley to set bail in a reasonable amount. In February 2001, Gillentine was indicted for two counts of capital murder. In August 2002, Gillentine was convicted of the lesser offense of manslaughter and was sentenced as a habitual felon to life in the penitentiary. We affirmed his conviction on direct appeal by an unpublished memorandum. See Gillentine v. State,880 So.2d 504 (Ala.Crim.App. 2003) (table).
In February 2004, Gillentine filed a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P., challenging his manslaughter conviction. The circuit court denied the petition; Gillentine appealed. By order, we dismissed Gillentine's appeal after finding that the circuit court had not ruled on the in forma pauperis declaration before ruling on the merits of the Rule 32 petition and that its judgment denying the petition was not a valid judgment.Gillentine v. State (CR-03-1946, December 3, 2004).
In March 2006, the circuit court entered a new order granting Gillentine's Rule 32 petition and setting aside his manslaughter conviction. The circuit court found that there had been reversible error in Gillentine's trial because the jury had not been given a jury instruction on reasonable doubt.
The State then notified the circuit court that it intended to proceed to trial on the original capital-murder charges. Gillentine moved that the capital-murder charges be dismissed, because, he argued, he had been acquitted of capital murder when the jury returned a verdict of man-slaughter in his first trial. Apparently, that motion was denied. Gillentine then moved that bail be set. Judge Bentley declined to set bail. Gillentine then filed this original petition for a writ of habeas corpus.[1] Gillentine's trial is scheduled to begin on June 19, 2006.
Gillentine argues that he is entitled to a reasonable bail because, he argues, the Double Jeopardy Clause of the United States Constitution forbids his prosecution for capital murder after he was previously convicted of the lesser offense of manslaughter.
The State asserts that because there was a structural defect in Gillentine's first trial — the trial judge failed to give the jury an instruction on reasonable doubt — Gillentine's retrial on the original capital-murder charges is not barred. Accordingly, it asserts, the circuit court correctly denied bail because Gillentine is awaiting trial on capital-murder charges. It cites the United States Supreme Court's opinion in Sullivan v. Louisiana,508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), in support of its assertion. *Page 1093 
Generally, a conviction for a lesser-included offense is an implied acquittal of a greater offense. See Ex parteDorsey, 881 So.2d 533, 538 (Ala. 2003). However, this conclusion is based on the premise that the first proceedings are valid and legal. If the first proceedings are invalid or void, then there is no violation of the Double Jeopardy Clause in any subsequent proceeding. See Dutton v. State,807 So.2d 596 (Ala.Crim.App. 2001).
 "`It is essential to constitute jeopardy that the court in which the accused is put upon his trial shall have jurisdiction. If it is without jurisdiction, there can be no valid conviction, and hence there is no jeopardy.' Benjamin F. Cox v. State, 585 So.2d 182, 192 (Ala.Crim.App. 1991), (quoting Anthony G. Cox v. State, 462 So.2d 1047, 1051
(Ala.Crim.App. 1985))."
807 So.2d at 598.
In Sullivan v. Louisiana, the United States Supreme Court addressed the impact of a jury instruction that incorrectly defined reasonable doubt. The United States Supreme Court stated:
 "In [Arizona v.] Fulminante, [499 U.S. 279 (1991),] we distinguished between, on the one hand, `structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards,' 499 U.S., at 309, and, on the other hand, trial errors which occur `during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented,' id., at 307-308, 111 S.Ct., at 1252, 1264. Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a `basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, Rose
[v. Clark], 478 U.S. [570], at 577 [(1987)]. The right to trial by jury reflects, we have said, `a profound judgment about the way in which law should be enforced and justice administered.' Duncan v. Louisiana, 391 U.S. [145], at 155 [(1968)]. The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'"
508 U.S. at 281-82, 113 S.Ct. 2078 (emphasis added).
This Court in Davis v. State, 682 So.2d 476
(Ala.Crim.App. 1995), found reversible error in a trial court's failure to give a jury instruction on reasonable doubt during a capital-murder trial after the defendant had pleaded guilty. Relying on Sullivan v. Louisiana, this Court stated:
 "The United States Supreme Court in Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), stated that an error in an instruction defining reasonable doubt can never be harmless error. Likewise, the failure to define reasonable doubt and to instruct the jury on the burden of proof during a proceeding in which the appellant pleads guilty to capital murder and in which the State is required by statute to prove the appellant's guilt beyond reasonable doubt cannot be harmless error. `"The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).' Hutcherson v. State, 677 So.2d 1174 (Ala.Crim.App. 1994)."
682 So.2d at 482.
The failure to give a jury instruction on reasonable doubt is a structural *Page 1094 
defect that nullifies the proceedings. Although this Court has never specifically addressed the impact of a structural defect on subsequent trial proceedings, a Louisiana Court of Appeals thoroughly addressed this issue in State v.Langley, 896 So.2d 200 (La.Ct.App. 2004). In State v.Langley, the court found that a trial judge's absences from the courtroom during trial led to a structural defect in the proceedings. In addressing the impact of a structural defect on Langley's retrial, the Louisiana Court of Appeals stated:
 "Generally, in Louisiana, if there are curable defects or errors in a defendant's first trial, he will either object and obtain relief or his failure to object will operate to cure the defects or errors. However, if the error or defect is not curable, as in the instant case, the defendant has necessarily not been in jeopardy because of the presence of the error or defect. See La. Code Crim.P. art. 595, cmt.(b).
 "Our supreme court discoursed on this issue in State v. Goodley, 423 So.2d 648 (La. 1982), wherein it was determined that an illegally obtained manslaughter verdict did not bar retrial for first degree murder based on double jeopardy. Subsequently, in State v. Campbell, 95-1409 (La. 3/22/96), 670 So.2d 1212, the court held the defendants could be retried for jury tampering after a jury returned an invalid verdict of guilty of attempted jury tampering. Cases such as these which involve an invalid jury verdict or structural error affecting the framework of the trial itself fall outside the general rule articulated in La. Code Crim.P. art. 598. Article 598 provides that when a defendant is found guilty of a lesser degree of the offense charged, the verdict acts as an acquittal of all greater offenses charged in the indictment. However, when a structural error destroys the validity of the proceedings, the trial and resulting verdict are an absolute nullity and can have no effect whatsoever.
 "The United States Supreme Court addressed the issue in Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), a case where the defendant was convicted of first degree murder, but the jury deadlocked in the penalty phase. The jury was unable to agree on whether an aggravating circumstance warranted the death penalty; the trial judge, following state law, then entered a life sentence. The Supreme Court held there was no double jeopardy bar to the state's seeking the death penalty on retrial after the defendant's successful appeal.
 "In Goodley, the court addressed double jeopardy issues which arise when an illegal verdict is found. The court succinctly explained:
 "`Where no valid judgment has been obtained, the defendant's double jeopardy interests simply cannot be considered to extend so far as to compel society to relinquish its interest in punishing one whose guilt is clear by means of a fair and procedurally accurate trial.
 "`This principle has been implicitly recognized and followed in Louisiana. In the case of State v. Cook, 396 So.2d 1258 (La. 1981) a patent error review revealed an invalid verdict which necessitated the reversal of the defendant's conviction. In ordering the reversal, this court held that retrial of the defendant was proper because `there was no legal verdict rendered, either of conviction or of acquittal'. Cook, supra at 1261. Although the Cook opinion does not directly address the double jeopardy issue, its holding does implicitly recognize that the double jeopardy protection simply does *Page 1095 
not extend to a situation in which no verdict, either of conviction or acquittal, has been rendered.
 "`It therefore becomes evident that the prohibition against double jeopardy does not operate to bar Goodley's retrial for the crimes of first degree murder or manslaughter. Although there is no doubt that jeopardy did attach in Goodley's initial trial for first degree murder, such jeopardy is not regarded as having come to an end so as to bar a subsequent prosecution for either first degree murder or manslaughter. Under the Fifth Amendment, where a non-waivable defect, such as an illegal verdict, prevents a jury from delivering either a conviction or acquittal at a defendant's first trial, that defendant, cannot avail himself of the plea of double jeopardy.'
"Goodley, 423 So.2d at 651.
 "The Goodley and [United States v.] Mortimer [, 161 F.3d 240 (3d Cir.1998),] cases characterize the verdict resulting from structural error as a nullity. The concept of nullity in criminal proceedings has long been distinguished from mere error, the latter of which may or may not affect the validity of the verdict."
896 So.2d at 210-11.
In this case, Gillentine's conviction resulting from his first trial was reversed because the court failed to give a jury instruction on reasonable doubt. The failure to give a reasonable-doubt instruction is a structural defect that nullifies the proceedings. See Sullivan v. Louisiana, supra. "[W]hen a structural error destroys the validity of the proceedings, the trial and resulting verdict are an absolute nullity and can have no effect whatsoever." State v.Langley, 896 So.2d at 210.
Accordingly, Gillentine is to be retried on the original charges of capital murder. Art. I, § 16, Ala. Const. 1901, provides:
 "That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great; and that excessive bail shall not in any case be required."
(Emphasis added.)
Judge Bentley acted within his discretion in denying bail in this capital-murder case. This petition for a writ of habeas corpus is due to be denied.
PETITION DENIED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
BASCHAB, J., dissents.
[1] Gillentine has also filed a petition for a writ of mandamus directing Judge Bentley to dismiss the capital-murder charges and to order that he be retried on the manslaughter charge. We have docketed that petition as CR-05-1261. *Page 1096