980 So.2d 966 (2007)
Ex parte Tommy J. GILLENTINE.
(In re State of Alabama
v.
Tommy J. Gillentine).
1051370.
Supreme Court of Alabama.
September 6, 2007.
*967 Tommy J. Gillentine, pro se.
Troy King, atty. gen., and Andy S. Poole and Jack W. Willis, asst. attys. gen., for respondent.

PETITION FOR WRIT OF MANDAMUS
SMITH, Justice.
Tommy J. Gillentine filed this petition for a writ of mandamus directing the Marion Circuit Court to enter an order dismissing the capital-murder charges against him and allow him to be prosecuted only for the lesser offense of manslaughter. Because the jury at Gillentine's first trial, at which he had been charged with capital murder, found him guilty of the lesser offense of reckless manslaughter, the State's attempt to again prosecute Gillentine for capital murder violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Therefore, we grant the petition and issue the writ.

Facts and Procedural History
On February 14, 2001, Gillentine was charged in a two-count indictment with capital murder; the indictment alleged that Gillentine had violated Ala.Code 1975, § 13A-5-40(a)(17) ("murder committed by or through the use of a deadly weapon while the victim is in a vehicle") and § 13A-5-40(a)(18) ("murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle"). On August 28, 2002, the jury returned a verdict finding Gillentine guilty of the lesser offense of reckless manslaughter, a violation of § 13A-6-3(a)(1), Ala.Code 1975. Gillentine was sentenced as a habitual offender to life in prison. In an unpublished memorandum, the Court of Criminal Appeals affirmed the conviction and sentence. Gillentine v. State (No. CR-01-2504, April 18, 2003), 880 So.2d 504 (Ala.Crim.App.2003) (table).
On March 23, 2006, the trial court entered an order granting Gillentine the relief he requested in a Rule 32, Ala. R.Crim. P., petition and setting aside Gillentine's manslaughter conviction.[1] The trial court granted the petition because it had not properly charged the jury at Gillentine's trial as to the prosecution's burden of proof; specifically, the trial court failed to *968 instruct the jury regarding reasonable doubt.
After Gillentine's manslaughter conviction was set aside, the State notified the trial court that it intended to retry Gillentine for capital murder as charged in the indictment; therefore, the trial court refused to set bail. Gillentine subsequently filed a motion to dismiss the capital-murder charges. He argued that he had been acquitted of capital-murder at his first trial when the jury convicted him of reckless manslaughter, a lesser offense included within the charged offense of capital murder. Consequently, Gillentine asserted that he could be retried only for the lesser-included offense of reckless manslaughter and that he could not be retried for the offense of capital murder.
The trial court denied Gillentine's motion to dismiss and also denied a later filed motion to set bail. Gillentine then filed in the Court of Criminal Appeals a petition for a writ of habeas corpus directing the trial court to set bail in a reasonable amount. Ex parte Gillentine, 945 So.2d 1091 (Ala.Crim.App.2006).[2]
In the Court of Criminal Appeals, Gillentine argued that his conviction for the lesser offense of manslaughter prevented his prosecution for capital murder. 945 So.2d at 1092. The Court of Criminal Appeals denied Gillentine's petition, concluding that "[t]he failure [of the trial court] to give a reasonable-doubt instruction [was] a structural defect that nullifie[d] the proceedings" that had resulted in Gillentine's conviction for manslaughter. 945 So.2d at 1095. Consequently, the Court of Criminal Appeals held that Gillentine could be prosecuted for capital murder and, therefore, that he was not entitled to bail. 945 So.2d at 1095. Judge Baschab dissented without a writing.
Gillentine timely filed a petition for a writ of mandamus in accordance with Rule 21(e), Ala. R.App. P.

Standard of Review
"A defendant's double-jeopardy claim is properly reviewed by a petition for a writ of mandamus. Ex parte Ziglar, 669 So.2d 133 (Ala.1995). In order for this Court to issue a writ of mandamus, [the petitioner] must establish: `"(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."' Ex parte Bloodsaw, 648 So.2d 553, 554 (Ala.1994) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991))."
Ex parte Benford, 935 So.2d 421, 425 (Ala. 2006).

Discussion
"`The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense.' United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (footnote omitted). The Fifth Amendment provides: 'No person shall . . . be subject *969 for the same offence to be twice put in jeopardy of life or limb. . . .' U.S. Const. amend. V. See also Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ('A State may not put a defendant in jeopardy twice for the same offense.'). The underlying policy of this constitutional principle is that
"`the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'
"Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)."
Ex parte Head, 958 So.2d 860, 866 (Ala. 2006).
As the Court of Criminal Appeals recognized, "[g]enerally, a conviction for a lesser-included offense is an implied acquittal of a greater offense." Ex parte Gillentine, 945 So.2d at 1093 (emphasis added). Accord Green v. United States, 355 U.S. 184, 189-91, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In Bradley v. State, 925 So.2d 232, 237 (Ala.2005), this Court held that a conviction for a lesser offense was an explicit acquittal of the greater offense, because the trial court in that case had instructed the jury that it could consider the lesser offense "only if it found that the State had failed to prove all of the elements of [the greater offense]."
Under those general principles stated in Green and Bradley, therefore, the jury's verdict finding Gillentine guilty of manslaughter normally would mean that the jury had found Gillentine not guilty of the greater offense of capital murder. Consequently, the Double Jeopardy Clause would prevent the State from retrying Gillentine for capital murder.
However, the State contends that the general principles do not apply in this case because, the State argues, the trial court's failure to give a reasonable-doubt instruction was a structural defect that "nullified" the jury's verdict finding Gillentine guilty of manslaughter and the jury's concomitant acquittal of Gillentine for capital murder and the lesser offense of murder. The State summarizes its positions as follows:
"The `verdict' of guilty of manslaughter was not void because the court did not give the reasonable doubt instruction; rather, the verdict does not exist. The error was such that it cannot be said that there was a verdict rendered at all by the jury. Because there was no verdict under the Sixth Amendment rendered in the case, there was no implied acquittal of the capital murder charges. Because there was no verdict under the Sixth Amendment rendered by the jury, there was no termination of initial jeopardy; therefore, there would be no double jeopardy violation if Gillentine was retried for capital murder."
(State's brief, p. 12.) In support of its argument, the State principally relies on two decisions: Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and State v. Langley, 896 So.2d 200 (La.Ct.App.2004). We are not persuaded by the State's argument.
In Sullivan, the United States Supreme Court held that the giving of "a constitutionally deficient reasonable-doubt instruction" is not harmless error. 508 U.S. at 276, 113 S.Ct. 2078. Sullivan did not involve a double-jeopardy claim; instead, the defendant in that case had been convicted of first-degree murder and sentenced to death. 508 U.S. at 277, 113 S.Ct. 2078. *970 The Louisiana Supreme Court recognized that the reasonable-doubt instruction was constitutionally deficient, but it nonetheless upheld the conviction, concluding that the error was harmless. Id. The United States Supreme Court reversed the Louisiana Supreme Court's judgment.
The United States Supreme Court first stated that, under the Fifth Amendment to the United States Constitution, "[t]he prosecution bears the burden of proving all elements of the offense charged . . . and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." 508 U.S. at 277-78, 113 S.Ct. 2078 (citations omitted). The Court then linked the requirement in the Fifth Amendment of proof beyond a reasonable doubt to the Sixth Amendment, concluding that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." 508 U.S. at 278, 113 S.Ct. 2078. Thus, the Court held that a reasonable-doubt instruction that violates the Fifth Amendment "does not produce such a verdict"that is, a verdict that comports with the Sixth Amendment. Id.
The Sullivan Court then explained why the Louisiana Supreme Court erred in applying a harmless-error review to the defendant's claim. The Court noted that the standard announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "recognizes that `certain constitutional errors, no less than other errors, may have been "harmless" in terms of their effect on the factfinding process at trial.'" Sullivan, 508 U.S. at 279, 113 S.Ct. 2078 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). However, the Court stated, some constitutional errors "will always invalidate a conviction." 508 U.S. at 279, 113 S.Ct. 2078.
The Court concluded that a constitutionally deficient reasonable-doubt instruction was not an error to which a harmless-error review could apply. 508 U.S. at 279-80, 113 S.Ct. 2078. The question a court applying a harmless-error review must answer "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." 508 U.S. at 279, 113 S.Ct. 2078. In other words, for a court to apply a harmless-error review, there must exist an actual  rather than a hypothetical  jury verdict of guilty beyond a reasonable doubt. If the jury has not been instructed properly as to reasonable doubt,
"there has been no jury verdict within the meaning of the Sixth Amendment, [and] the entire premise of [harmless-error] review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubtnot that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. . . . The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty."
508 U.S. at 280, 113 S.Ct. 2078 (first emphasis added; citations omitted). The Court concluded that "[d]enial of the right to a jury verdict of guilt beyond a reasonable *971 doubt is" a "`structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards.'" 508 U.S. at 281, 113 S.Ct. 2078 (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
Thus, Sullivan establishes that a trial in which there is a constitutionally deficient reasonable-doubt instruction cannot result in a jury verdict of guilty beyond a reasonable doubt that is subject to a harmless-error review. In other words, if a reasonable-doubt instruction is constitutionally deficient (or, as in Gillentine's case, completely absent), "there has been no jury verdict [of guilty beyond a reasonable doubt] within the meaning of the Sixth Amendment." 508 U.S. at 280, 113 S.Ct. 2078. The State, however, seeks to extend Sullivan and establish a rule that the presence of a structural error in the trial proceedings means that there has been no jury verdict at all, for any purpose. We disagree.
First, the Sullivan Court did not hold that there had been no actual jury verdict; instead, Sullivan held that within the context of whether harmless-error review could be applied, there had been no jury verdict of guilty beyond a reasonable doubt as required by the Sixth Amendment. As Gillentine points out: "The [Sullivan] Court held as [it] did . . . to emphasize that a reasonable-doubt violation was not subject to harmless-error reviewNOTHING MOREand [that holding] has no application to a double-jeopardy claim." (Petition, p. 17.)
Second, since the Court of Criminal Appeals released its opinion denying Gillentine relief and since the State filed its materials in response to Gillentine's mandamus petition to this Court, a decision relied on by both the State and the Court of Criminal Appeals  State v. Langley, 896 So.2d 200 (La.Ct.App.2004)  has been expressly disapproved of by the Louisiana Supreme Court. In Langley, the Louisiana Court of Appeal held that a judge's absences from the courtroom during the trial constituted a structural error that nullified the entire proceedings. 896 So.2d at 210-12. However, the Louisiana Supreme Court held that the trial judge's absences were "trial error" rather than structural error and, consequently, "the trial in which [the] conviction was obtained was not an absolute nullity." State v. Langley, 958 So.2d 1160, 1169 (La.2007)
In the present case, there is no question that the trial court's failure to give a reasonable-doubt instruction constitutes a structural error. If a structural error exists in a case in which there is a constitutionally deficient reasonable-doubt instruction, then, a fortiori, a structural error exists in a case in which there is no reasonable-doubt instruction at all. Thus, the Louisiana Supreme Court's decision  in which there was no structural error  is not entirely analogous to this case.
Even so, the Louisiana Supreme Court expressed an opinion disapproving of the "nullification" argument made by the Louisiana Court of Appeal (and advanced by the State here). The Louisiana Supreme Court stated: "We do not subscribe to the appellate court's broad view that structural errors or defects necessarily constitute the functional equivalent of jurisdictional defects which render the proceedings not merely voidable but absolutely null." Langley, 958 So.2d at 1169 n. 7. We agree with the Louisiana Supreme Court's opinion regarding the effect of a structural error on trial proceedings.
Other than the Louisiana Court of Appeal, the State has not cited any jurisdiction that has interpreted Sullivan to mean that the presence of a structural error in *972 the trial proceedings always "nullifies" the entirety of the proceedings in which that error occurred. However, at least one court  although not deciding whether the particular error before it constituted a structural error  has expressly rejected the Louisiana "nullification" theory. Moody v. State, 931 So.2d 177 (Fla.Dist.Ct. App.2006). Under the circumstances of this petition, we see no persuasive reason to adopt the State's "nullification" theory.
As noted, the jury in this case found Gillentine guilty of manslaughter, a lesser-included offense of capital murder, and, under double-jeopardy principles, the conviction of a lesser offense normally operates as an implicit acquittal of the greater offense. In fact, as in Bradley, 925 So.2d at 237, the jury's conviction of the lesser offense in the present caseunder the general double-jeopardy rulewas an express acquittal of the greater offense, because the jury was instructed that it could consider whether Gillentine was guilty of manslaughter only if it first concluded that the State had not proved all the elements of capital murder or of the lesser offense of murder. Specifically, the trial court's instructions were as follows:
"If after carefully considering all of the evidence in the case it is your decision that the State of Alabama has met its burden of proof as I have defined that to you on . . . the charge of capital murder then your verdict should be in this form: `We the jury find the defendant Gillentine guilty of capital murder as charged.'
"On the other hand, if after carefully considering all of the evidence in the case it is your decision that the State of Alabama has not met its burden of proof as I have defined that to you on the charge of capital murder . . . but that the State of Alabama has met its burden of proof as I have defined that to you on the lesser included offense of murder, then your verdict should be in this form: `We, the jury, find the defendant Gillentine guilty of murder as charged.'
"On the other hand, if after carefully considering all of the evidence in the case that it is your decision that the State of Alabama has not met its burden of proof as I have defined that to you as to . . . the charges of capital murder and the lesser included offense of murder, but, on the other hand, has met its burden of proof as I have defined that to you on the charge of manslaughter, then your verdict should be in this form: 'We, the jury, find the defendant Gillentine guilty of manslaughter as charged.'"
(Emphasis added.) "`The law is well settled that this Court will presume that the jury followed the trial court's instructions unless there is evidence to the contrary.'" Bradley, 925 So.2d at 237 (quoting Wootten v. Ivey, 877 So.2d 585, 590 (Ala.2003)). Thus, by finding Gillentine guilty of the lesser offense of manslaughter, the jury concluded that the State had not met its burden of proofwhatever it understood that burden to beas to the greater offenses. That is, the jury verdict of guilty of manslaughter means there was an acquittal as to the greater offenses. A judgment was entered on that verdict, and Gillentine began serving his prison sentence.
Normally, the State would have had no right to appeal from the judgment entered on the jury's acquittal of the greater offenses in Gillentine's case. As the Supreme Court stated in Sanabria v. United States, 437 U.S. 54, 75, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978): "[T]here is no exception permitting retrial once the defendant has been acquitted, no matter how `egregiously erroneous,' Fong Foo v. United States, 369 U.S. [141], at 143 [(1962)], *973 the legal rulings leading to that judgment might be." Accord Ex parte Adams, 592 So.2d 641, 642 (Ala.1991) ("`[W]ith the exception of certain pretrial appeals . . . and habeas corpus cases, the State is not entitled to an appeal from a judgment in a criminal case in the absence of a judgment of the trial court holding the statute under which the indictment or information was preferred to be unconstitutional. State v. Gautney, 344 So.2d 232 (Ala.Crim.App. 1977); State v. Powe, 28 Ala.App. 402, 185 So. 781 (1939); State v. Cagle, 42 Ala.App. 344, 164 So.2d 512 (1964). See also § 12-22-91, Code of Alabama, 1975. The State is not entitled to appeal the circuit court's judgment of acquittal and discharge of the appellee.'" (quoting City of Mobile v. Welch, 572 So.2d 1322, 1323 (Ala.Crim. App.1990))). Because Gillentine successfully had his manslaughter conviction set aside, however, the State now seeks to also have Gillentine's acquittal of the greater offenses set aside. The State seeks to justify setting aside the acquittal on the charges of capital murder and murder on the theory that the manslaughter conviction was a "nullity."
For the reasons expressed above, we reject the nullification argument. An implication of the State's nullification argument is that, by seeking review of his conviction for manslaughter, Gillentine has somehow "waived" his right to assert former jeopardy as to the capital-murder charges. However, the Supreme Court has rejected a "waiver" theory as a basis for disregarding the rule that an accused may not be tried again for the greater offense after he has been convicted of a lesser offense. See, e.g., Green, 355 U.S. at 190-92, 78 S.Ct. 221. In Green, the Court stated:
"Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. Wade v. Hunter, 336 U.S. 684 [(1949)]. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'
"After the original trial, but prior to his appeal, it is indisputable that Green could not have been tried again for first degree murder for the death resulting from the fire. A plea of former jeopardy would have absolutely barred a new prosecution even though it might have been convincingly demonstrated that the jury erred in failing to convict him of that offense. And even after appealing the conviction of second degree murder he still could not have been tried a second *974 time for first degree murder had his appeal been unsuccessful.
"Nevertheless the Government contends that Green 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a successful appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. Cf. Johnson v. Zerbst, 304 U.S. 458 [(1938)]. When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice. And as Mr. Justice Holmes observed, with regard to this same matter in Kepner v. United States, 195 U.S. 100, at 135 [(1904)]: `Usually no such waiver is expressed or thought of. Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.'"
355 U.S. at 190-92, 78 S.Ct. 221 (footnote omitted).
The right to a jury verdict of guilty beyond a reasonable doubt and the right against double jeopardy are rights the Constitution guarantees the accused in a criminal proceeding. Thus, we reject the assertionon which the State's argument is premisedthat a jury's verdict of not guilty is valid only if the jury was properly instructed as to reasonable doubt.

Conclusion
Gillentine has demonstrated a valid claim of former jeopardy; at his first trial, he was acquitted of capital murder and the lesser offense of murder, and the State may not try him again for those offenses, although it may retry him for manslaughter. Consequently, we grant his petition for a writ of mandamus.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, WOODALL, BOLIN, PARKER, and MURDOCK, JJ., concur.
STUART, J., concurs in the result.
COBB, C.J., recuses herself.
STUART, Justice (concurring in the result).
In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the United States Supreme Court specifically recognized that a defendant's claim of former jeopardy is not based on the previous conviction for the lesser-included offense, but instead on the original jury's refusal to convict the defendant of the charged offense. This Court in Bradley v. State, 925 So.2d 232 (Ala.2005), applied the reasoning of Green, which was explicated in Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). In Bradley, this Court held that when the trial court instructed the jury that it could consider a lesser-included offense it concluded that the State failed to prove all the elements of the charged offense, and the jury adhered to that instruction and refused to convict the defendant of the charged offense, its verdict constituted an express acquittal of the charged offense. Therefore, we concluded in Bradley that jeopardy had attached *975 and that the State could not retry the defendant for the charged offense.
In this case, the trial court, like the trial court in Bradley, specifically instructed the jury that before it could consider finding Gillentine guilty of a lesser-included offense, it must conclude that the State had not met its burden of proof to establish the charged offense of capital murder. Because the jury is presumed to follow the trial court's instructions, the jury's refusal to convict Gillentine of capital murder necessitates the legal conclusion that the jury acquitted Gillentine of capital murder. Thus, jeopardy attached, and the State cannot retry Gillentine for capital murder. I emphasize that the facts of this case require this conclusion. I can envision situations where the facts of a case establish that a jury's refusal to convict a defendant of the charged offense does not constitute an acquittal of the charged offense, and, in such a situation, I believe the State can retry the defendant for the greater offense. See, e.g., United States v. Williams, 449 F.3d 635 (5th Cir.2006).
NOTES
[1] Gillentine filed two Rule 32 petitions; the trial court denied the first petition but granted the second. Gillentine filed his first petition on February 12, 2004. Because the filing fee had not been paid or waived, the trial court denied  rather than dismissed  that petition. On appeal from the denial of that petition, the Court of Criminal Appeals determined that Gillentine had not invoked the jurisdiction of the trial court because the filing fee had not been paid or waived. Consequently, the Court of Criminal Appeals held that the trial court's order denying Gillentine's petition was void, and it dismissed Gillentine's appeal. Gillentine v. State (No. CR-03-1946, Dec. 3, 2004). Gillentine then paid a filing fee and filed a second petition under Rule 32, Ala. R.Crim. P., which was essentially identical to his first Rule 32 petition.
[2] Gillentine also filed in the Court of Criminal Appeals a petition for a writ of mandamus directing the trial court "to dismiss the capital-murder charges and to order that he be retried on the manslaughter charge"; that petition was denied by an unpublished order on June 9, 2006. Ex parte Gillentine (No. CR-05-1261, June 9, 2006), 978 So.2d 86 (Ala.Crim.App.2006) (table). The order states that the mandamus petition was denied for the reasons stated in the Court of Criminal Appeals' opinion denying Gillentine's habeas petition.