PER CURIAM.
 

 Brandon T. McCombs filed this petition for a writ of mandamus directing Judge Clyde E. Jones to set aside his order denying McCombs’s motion to bar his second trial for murder based on double-jeopardy grounds after we reversed McCombs’s conviction for manslaughter following his first trial. McCombs was indicted on a charge of murder, a violation of § 13A-6-2, Ala.Code 1975. He was tried and convicted of the lesser-included offense of manslaughter, and he appealed. On appeal, this Court held that McCombs had been denied the effective assistance of counsel because his attorney had instructed McCombs to lie on the witness stand and to deny that he stabbed the victim. See
 
 McCombs v. State,
 
 3 So.3d 950 (Ala.Crim.App.2008). In
 
 McCombs,
 
 we stated:
 

 “The evidence was undisputed that McCombs had been told that he was outnumbered and that it was possible he was going to get his ‘butt whooped.’ McCombs had been hit by three people and, by all accounts, was attempting to run when Vaughan was killed. Based upon this evidence, a defense that McCombs acted out of a reasonable belief that an assault was imminent was a viable defense. Had the jury been allowed to consider that McCombs acted in self-defense, the verdict may have been different. Armstrong’s deficient conduct prejudiced McCombs’s opportunity for a fair trial and reliable verdict.”
 

 McCombs,
 
 3 So.3d at 954. Ultimately, we remanded the case for further proceedings. McCombs then filed a motion seeking to bar the State from prosecuting him a second time on the murder charge. Judge Jones held a hearing and denied the motion after finding that McCombs’s misconduct was the cause of the reversal of the judgment entered following the first trial. McCombs then filed this petition for a writ of mandamus with this Court.
 
 [1]
 

 
 *1177
 
 Initially, we note that a petition for a writ of mandamus may be used to seek review of a lower court’s ruling denying a claim based on double-jeopardy principles.
 

 “We are satisfied that a criminal defendant with a double jeopardy defense should not be foreclosed from pretrial correction of a trial judge’s erroneous denial of a plea of former jeopardy. Therefore, the appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus. See Rule 21(e), Ala. R.App.P. This procedure will adequately protect the interest of a defendant, as emphasized in
 
 Abney [v. United States,
 
 431 U.S. 651 (1977) ], so as to avoid the personal strain, public embarrassment, and expense of a subsequent criminal trial.”
 

 Ex parte Ziglar,
 
 669 So.2d 133, 135 (Ala.1995).
 

 McCombs argues that because he was acquitted of the murder charge when the jury returned a verdict on the lesser-included offense of manslaughter any retrial on the original charge of murder violates the Double Jeopardy Clause. The State asserts that because McCombs’s own actions caused the error on which the reversal was based the State may proceed on the original charge of murder.
 

 The Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution provides that no person shall “be subject for the same offense to be twice put in jeopardy of life or limb.” This same provision is contained in the Alabama Constitution. See Art. I, § 9, Ala. Const.1901.
 

 Generally, “the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense.”
 
 Jeffers v. United States,
 
 432 U.S. 137, 150, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). “The conviction for a lesser included offense is an
 
 implied
 
 acquittal as to the greater offense.”
 
 Ex parte Ziglar,
 
 675 So.2d 543, 545 (Ala.Crim.App.1996). In
 
 Bradley v. State,
 
 925 So.2d 232 (Ala.2005), the Alabama Supreme Court recognized that a trial court’s jury instructions could result in an
 
 explicit
 
 acquittal as to the greater offense. The court stated:
 

 “The jury verdict at the conclusion of Bradley’s trial represented more than an implicit acquittal of the charge of robbery in the first degree; under the instructions by which the jury was bound, its verdict included an explicit acquittal with respect to the offense of robbery in the first degree. The jury was instructed that only if it found that the State had failed to prove all of the elements of robbery in the first degree, so that the jury could not find Bradley guilty of that offense, should it ‘[i]n that event, ... move to consideration of the lesser included offense of assault in the second degree.’ ‘The law is well settled that this Court will presume that the jury followed the trial court’s instructions unless there is evidence to the contrary.’
 
 Wootten v. Ivey,
 
 877 So.2d 585, 590 (Ala.2003). The verdict form, which listed in descending order the available verdict options by which Bradley could be found guilty of robbery in the first degree, assault in the second degree, or assault in the third degree or be found simply ‘not guilty,’ conformed to the jury instructions, so that the verdict form contained no option that stated
 
 *1178
 
 that Bradley was not guilty of robbery in the first degree. The verdict of not guilty of first-degree robbery was an explicit condition precedent, under the trial court’s instructions, to the jury’s proceeding to consider the offenses of assault in the second and third degrees. Accordingly, proceeding under those instructions and using the conforming verdict form, the jury clearly declared by its verdict that it had found Bradley not guilty of the offense of robbery in the first degree.”
 

 925 So.2d at 237-38. McCombs asserts that he was explicitly acquitted of the murder charge because the trial court instructed the jury that the jury could not consider the lesser-included offense until it found that the State had not proven the greater offense.
 
 [2]
 

 Nonetheless, the State contends that the general bar against retrial imposed by the Double Jeopardy Clause does not apply in this case because, it says, McCombs should not be allowed to profit from his own misconduct. In essence, the State appears to argue that McCombs’s misconduct rendered the first trial proceedings a nullity and that, therefore, jeopardy did not attach.
 

 When evaluating whether a second trial is barred based on double-jeopardy grounds, we must examine the reason the judgment in the first trial was reversed. Traditionally, errors necessitating reversal have been classified as “trial error” or “structural error.” Trial error is ordinarily subject to a harmless-error analysis and does not render the underlying proceedings invalid. See
 
 Arizona v. Fulminante,
 
 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In contrast, structural error “ ‘affec[ts] the framework within which the trial proceeds,’ and are not ‘simply an error in the trial process itself.’ ”
 
 United States v. Gonzalez-Lopez,
 
 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (quoting
 
 Fulminante,
 
 499 U.S. at 309-10, 111 S.Ct. 1246.). Structural error usually requires no showing of prejudice by the defendant and may invalidate the first proceeding. See
 
 Brecht v. Abrahamson,
 
 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). If the first proceeding is invalid or void, then no jeopardy attaches to those proceedings. See
 
 Cox v. State,
 
 585 So.2d 182 (Ala.Crim.App.1991).
 

 “United States v. Gonzalez-Lopez,
 
 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), reaffirmed the limited nature of the structural defects category, identifying the types of constitutional errors which qualify as structural defects: ‘the denial of counsel,
 
 see Gideon v. Wainmight,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the denial of the right of self-representation,
 
 see McKaskle v. Wiggins,
 
 465 U.S. 168, 177-78 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the denial of the right to public trial,
 
 see Waller v. Georgia,
 
 467 U.S. 39, 49 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable doubt instruction,
 
 see Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).’
 
 Id.
 
 at 2564.
 
 Gonzalez-Lopez
 
 added to the list of structural defects, ‘erroneous deprivation of the right to counsel of choice, “with consequences that are necessarily unquantifiable and indeterminate.” ’
 
 Id.
 
 at 2564 (citing
 
 Sullivan,
 
 supra, 508 U.S. at 282,113 S.Ct. 2078).”
 

 Kidd v. United States,
 
 940 A.2d 118, 125 (D.C.2007).
 

 
 *1179
 
 Here, the error that necessitated a new trial, the alleged ineffective assistance of counsel, does not fall within the category of errors that have been classified as structural. Ineffective-assistance-of-counsel claims typically require a showing of prejudice. See
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 Moreover, even if the error was structural, the Aabama Supreme Court recently declined to hold that a structural error automatically invalidates a first trial. See
 
 Ex parte Gillentine,
 
 980 So.2d 966 (Ala.2007).
 

 In
 
 Ex parte Gillentine,
 
 945 So.2d 1091 (Ala.Crim.App.2006), we addressed the effect of a structural error on a defendant’s constitutional right to be free from double jeopardy. Gillentine was convicted of the lesser-included offense of manslaughter in his first trial after the trial court failed to give a jury instruction on reasonable doubt. Relying on
 
 State v. Langley,
 
 896 So.2d 200 (La.Ct.App.2004), we held that the State was not barred from prosecuting Gillentine on the capital-murder charge because there was a structural error in the first trial that rendered those proceedings invalid. Thus, we held that jeopardy had not attached to the first trial. See
 
 Cox,
 
 supra.
 

 A similar mandamus was then filed in the Aabama Supreme Court. The Supreme Court reversed this Court’s judgment and held that the trial court’s failure to give an instruction on reasonable doubt, an error that Court called structural, did not nullify or invalidate the first trial. See
 
 Ex parte Gillentine,
 
 980 So.2d 966 (Aa. 2007). The Supreme Court, in disapproving of this Court’s reliance on
 
 Langley,
 
 stated:
 

 “[S]ince the Court of Criminal Appeals released its opinion denying Gillentine relief and since the State filed its materials in response to Gillentine’s mandamus petition to this Court, a decision relied on by both the State and the Court of Criminal
 
 Appeals
 
 — State
 
 v. Langley,
 
 896 So.2d 200 (La.Ct.App.2004) — has been expressly disapproved of by the Louisiana Supreme Court. In
 
 Langley,
 
 the Louisiana Court of Appeal held that a judge’s absences from the courtroom during the trial constituted a structural error that nullified the entire proceedings. 896 So.2d at 210-12. However, the Louisiana Supreme Court held that the trial judge’s absences were ‘trial error’ rather than structural error and, consequently, ‘the trial in which [the] conviction was obtained was not an absolute nullity.’
 
 State v. Langley,
 
 958 So.2d 1160, 1169 (La.2007).
 

 [[Image here]]
 

 “... [T]he Louisiana Supreme Court expressed an opinion disapproving of the ‘nullification’ argument made by the Louisiana Court of Appeal (and advanced by the State here). The Louisiana Supreme Court stated: ‘We do not subscribe to the appellate court’s broad view that structural errors or defects
 
 necessarily
 
 constitute the functional equivalent of jurisdictional defects which render the proceedings not merely voidable but absolutely null.’
 
 Langley,
 
 958 So.2d at 1169 n. 7. We agree with the Louisiana Supreme Court’s opinion regarding the effect of a structural error on trial proceedings.
 

 “Other than the Louisiana Court of Appeal, the State has not cited any jurisdiction that has interpreted
 
 Sullivan [v. Louisiana,
 
 508 U.S. 275 (1993),] to mean that the presence of a structural error in the trial proceedings always ‘nullifies’ the entirety of the proceedings in which that error occurred. However, at least one court — although not deciding whether the particular error before
 
 *1180
 
 it constituted a structural error — has expressly rejected the Louisiana ‘nullification’ theory.
 
 Moody v. State,
 
 931 So.2d 177 (Fla.Dist.Ct.App.2006). Under the circumstances of this petition, we see no persuasive reason to adopt the State’s ‘nullification’ theory.”
 

 980 So.2d at 971-72.
 

 Also, in
 
 Ex parte Gillentine,
 
 the Supreme Court cited with approval the case of
 
 Moody v. State,
 
 931 So.2d 177, 181 (Fla.Dist.Ct.App.2006), in which the Florida Court of Appeal held:
 

 “[I]n the context of a defendant’s double jeopardy protections, an acquittal establishes an even brighter line: ‘[Tjhere is no exception [to the prohibition against trying the person again for the same offense] permitting retrial once the defendant has been acquitted, no matter how “egregiously erroneous,” ’ the acquittal may have been.
 
 Sanabria [v. United State
 
 ], 437 U.S. [54] at 75, 98 S.Ct. 2170 [ (1975) ] (quoting
 
 Fong Foo v. United States,
 
 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962)).”
 

 Likewise, the United States Supreme Court in
 
 Sanabria v. United States,
 
 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), stated:
 

 “In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That ‘ “[a] verdict of acquittal ... [may] not be reviewed ... without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,” has recently been described as ‘the most fundamental rule in the history of double jeopardy jurisprudence.’
 
 United States v. Martin Linen Supply Co.,
 
 430 U.S. 564, 571 (1977), quoting
 
 United States v. Ball,
 
 163 U.S. 662, 671 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is ‘based upon an egregiously erroneous foundation.’
 
 Fong Foo v. United States,
 
 369 U.S. 141, 143 (1962); see
 
 Green v. United States,
 
 355 U.S. 184, 188 (1957). In
 
 Fong Foo
 
 the Court of Appeals held that the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the Government rested its case. We accepted the Court of Appeals’ holding that the 'District Court had erred, but nevertheless found that the Double Jeopardy Clause was ‘violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense.’ 369 U.S., at 143. Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.”
 

 (Footnote omitted.)
 

 Based on the above-cited cases, we must hold that the State is barred from prosecuting McCombs on the murder charge because the jury’s verdict on the lesser offense of manslaughter acquitted him of the greater offense of murder. Accordingly, this petition for a writ of mandamus is due to be granted. Judge Jones is directed to grant McCombs’s motion seeking to bar his retrial on the murder charge. We note that there is no constitutional impediment to the State proceeding against McCombs on the manslaughter charge or any lesser offense.
 

 PETITION GRANTED; WRIT ISSUED.
 

 WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.
 

 [1]
 

 . This petition was filed within 42 days of the ruling that is the subject of this petition; therefore, it is timely. See Rule 21(a), Ala. R.Crim. P.
 

 [2]
 

 . The State does not dispute this assertion; thus, we consider it to be true. See
 
 Ex parte Smith,
 
 942 So.2d 356 (Ala.2006).